# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JACQUELINE PAXTON for JAY PAXTON (deceased),**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　**Case No.  6:04-cv-1253-Orl-DAB**

**JO ANNE BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff[1] brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

---

[1] Plaintiff Jacqueline Paxton brings suit on behalf of her late husband, Jay Paxton, who applied for benefits before passing away.  The Court will refer to Mr. Paxton as Plaintiff for ease of reference.

## *I. BACKGROUND*

### A.     Procedural History

Plaintiff filed for disability insurance benefits on May 28, 2001. R. 61-63. He alleged an onset of disability on May 31, 1998, due to diabetes mellitus and osteoarthritis of the hip. R. 71, 245. His application was denied initially and upon reconsideration. R. 32-36. Plaintiff requested a hearing, which was held on April 9, 2003, before Administrative Law Judge Apolo Garcia (hereinafter referred to as "ALJ"). R. 236-61. In a decision dated May 9, 2003, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 13-23. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 12. The Appeals Council denied Plaintiff's request on July 7, 2004. R. 4-6. Plaintiff filed this action for judicial review on August 18, 2004. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of diabetes, severe arthritis in the left hip and moderate arthritis in the right hip, and skin problems. R. 245. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from severe osteoarthritis of the left hip, diabetes mellitus, chronic obstructive pulmonary disease ("COPD"), early osteoarthritis of the ankles and mild osteoarthritis of the right knee, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 20. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to stand, walk, and sit six hours in an eight-hour workday and lift twenty pounds frequently; however, he would have frequent limitations in climbing, stooping, kneeling, crouching and crawling and occasional limitations in balancing and would need to avoid fumes, odors, dusts, gases, poor

ventilation and hazardous machinery and heights. R. 21. In making this determination, the ALJ found that Plaintiff's allegations and subjective symptoms were out of proportion and inconsistent with the medical evidence and not fully credible for the reasons set forth in the body of the decision. R. 21. The ALJ further found that Plaintiff had not followed his prescribed medical treatment for diabetes. R. 21.

Plaintiff had a high school education and three years of college (R. 77, 239-40), had worked as Navy engineer from 1986 to 1990, and as a civilian Quality Assurance Engineer at the Space Center from 1991 to 1998 (R. 72, 80-82, 241-44). Based upon Plaintiff's RFC and the testimony of a vocational expert (VE), the ALJ determined that Plaintiff could perform his past relevant work as a quality assurance engineer in the civilian (but not military) sector. R. 21-22; 82, 256. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by finding he had the RFC to perform his past relevant work. Second, Plaintiff contends the ALJ erred by improperly applying the pain standard. Third, he argues that the ALJ erred by failing to consider all of Plaintiff's impairments in combination. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**A. Pain and credibility.**

Plaintiff asserts that the ALJ erred by improperly evaluating his subjective complaints of pain. He contends that the record demonstrates his credibility and that the ALJ failed to provide adequate and specific reasons for discrediting his complaints. The Commissioner contends that Plaintiff's reported activities contradict his assertion of total disability.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Plaintiff was diagnosed with severe osteoarthritis of the left hip, with bone on bone configuration. R. 172. Plaintiff testified that he considered his hip to be his biggest problem and he was unable to climb or walk long distances without using a cane. R. 244-45. He also testified that his diabetes was not under sufficient control, with high and low extremes in blood sugar. R. 246-47. Plaintiff was also diagnosed with COPD and skin problems. R. 103-04, 167, 173, 197; 142, 153. He contends that these impairments limited him to less than even sedentary work. The Commissioner contends that substantial evidence supports the ALJ's determination that Plaintiff retained the RFC for light work with some restrictions.

Plaintiff testified that he needed a cane to assist in walking due to problems with his left hip and having problems with climbing and walking more than ten minutes at a time. R. 244-45. However, he admitted that the cane was not prescribed by a doctor. R. 250-51. Moreover, Plaintiff reported riding his bike four miles per day, seven days per week (R. 179) in 2000 (just three months after being diagnosed with severe arthritis in his hip) and subsequently into 2002. R. 174-76; 134,

-5-

159-61. He testified to being able to sit and drive a car long enough to reach the Florida state line from New Smyrna Beach, for roughly 2 to 3 hours in one sitting (R. 250) and he also rode a riding lawn mower to mow his lawn. R. 248. At the April 30, 2001 consultative examination, Dr. Gilmer found that Plaintiff had decreased range of motion in his left hip; however, he was able to walk without assistance and without a limp and Plaintiff had normal ranges of motion in his ankles and knees. R. 103. A state agency physician assessing Plaintiff's residual functional capacity concluded that Plaintiff retained the ability to perform at a light level of exertion as of May 21, 2001. R. 110-17.

As the Commissioner points out, according to VA records, Plaintiff's skin problems were episodic and responded to treatment. R. 183-84, 193, 229, 233, 245, 253-54. Plaintiff's VA records also indicate that he had COPD, but no complications from the condition, and he continued to smoke despite doctors' repeated orders to quit. R. 133 ("not interested in quitting" in January 2002), 170, 181-82, 197, 202, 226.

As to his diabetes, the VA records confirm that Plaintiff's blood sugar was not under control. R. 220. However, as the ALJ noted, Plaintiff was not following the prescribed treatment for his diabetes:

> Despite complaints of disabling proportions and medical advice to stop smoking, follow a regular diet, test blood sugar regularly and take medicines regularly, the claimant does not follow prescribed treatment consistently. Nevertheless, symptoms are shown to be significantly improved when the claimant does comply with his medications and diet. At such time, clinical findings have been only minimal.

R. 21. The records also showed that Plaintiff tended to adjust his medication on his own, did not fully comply with his prescribed diet, and did not check his blood sugar regularly. R. 127, 159, 160, 166-67, 220 ("it is clear that he self-adjusts his meds regularly and is poorly compliant with his diet"-- August 12, 2002). In September 1999, Plaintiff was advised to balance his carbohydrates to aid in

controlling his diabetes. R. 180. When Plaintiff returned to the VA in October 1999, he was eating better and his glucose readings had improved. R. 177-78. By April 2002, despite having been in the emergency room two weeks before with critically low blood sugar, Plaintiff reported having an irregular eating schedule, eating whatever he wanted at various times, not counting carbohydrates, and taking medication and insulin on his own schedule. R. 127. He also reported "working as an entertainer" and playing music until late at a night club. R. 127. Four months later, in August 2002, a treatment note reported that Plaintiff's blood sugar was still poorly controlled and noted that he was self-adjusting his medications and not compliant with his diet. R. 220.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 21. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated,

> The claimant's subjective complaints and symptoms, including his allegation of pain has been given a great deal of thought and carefully compared to the other evidence. The claimant's testimony and other reports reflect that he lives a light type lifestyle,

-7-

>which is consistent with the medical evidence. The claimant is able to take care of this personal needs, and do laundry. He can shop and drive. The clinical evidence even shows that he was attending college full time, riding a bike four miles a day, seven days a week and working as an entertainer. There are no reported side effects from medications. Activities and reports such as these are inconsistent with his allegations of incapacitating limitations or pain. This is not to minimize the medical impairment demonstrated in the record. His impairment does restrict the claimant from heavy lifting as well as postural and environmental limitations. However, the clinical findings resulting from these impairments do not appear to be of a degree capable of producing limitations of incapacitating proportions. Accordingly, the undersigned finds that the claimant's allegations and subjective symptoms are out of proportion and inconsistent with the medical evidence and are not fully credible (Social Security Ruling 96-7p).

R. 21.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ offered specific reasons for discrediting the severity of Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between Plaintiff's reported limitations and the examination findings, as well as inconsistencies between his statements and his activities as reported in the medical records, such as riding a bike four miles a day, playing music as an entertainer in a club late at night (as of April 2002), and attending college classes in the morning and afternoon. R. 127, 179. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529. The ALJ's reasons for partially discrediting Plaintiff's subjective symptoms are supported by substantial evidence. (*See, e.g.*, R. 127, 134, 159, 177, 179).

**B.     RFC and past relevant work.**

Plaintiff claims that the ALJ should not have found him able to perform his past relevant work in light of his limitations. Plaintiff points to the rash on his arms, legs, and feet, poor diabetes control, history of gangrene in his right foot, arthritis in his left hip, and COPD as impairments which precluded him from performing his past relevant work. The Commissioner contends Plaintiff's description of his civilian job coupled with the testimony of the VE, which was properly relied upon by the ALJ, confirmed that the demands of his civilian quality assurance job were compatible with his RFC and the ALJ's decision is supported by substantial evidence.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d).

The administrative law judge (ALJ) found that plaintiff retained the residual functional capacity (RFC) to stand, walk, and sit six hours in an eight-hour day and lift twenty pounds with frequent limitations in climbing, stooping, kneeling, crouching and crawling and occasional limitations in balancing; and that plaintiff should avoid fumes, odors, dusts, gases, poor ventilation, hazardous machinery, and heights. R. 22. Plaintiff was an engineer in the Navy for eighteen years, reaching the rank of master chief to an admiral. R. 72, 80-82, 243. Plaintiff had experience in steam plants, marine engineering, electrical, air-conditioning, and refrigeration. R. 244. Plaintiff worked as a civilian Quality Assurance engineer at the Space Center from 1991 to 1998. R. 241-44.

Plaintiff described his civilian job as a quality assurance engineer as "overseeing work, electronic and mechanical personnel, making reports and filing, computer input with up to date programs, attend meetings, enforce safety, and work with blue prints. There was climbing involved due to on each platform there was equipment important to the spacecraft going 300 feet into the sky." R. 82, 87. At the hearing, Plaintiff testified:

> I was a quality engineer. And that concluded [sic] to a lot of climbing, going out on places that normal people wouldn't want to venture out into. But it was high, 300 feet off the ground sometimes, and you had to check it and buy the job. When you bought the job, why, supposedly it was complete and ready to go. *But anyway, I could no longer do that, and they protected me and kept me on the ground because I was pretty good with the schematics and stuff in the office.* So that's what I did, and that's how I got by until the day the company lost its contract. . . . Well, you were responsible for almost every operating system out there. You didn't have any connections with the bird or, you know, the shuttle or the titan. But you had to take care of its ground control, like, the pad itself. All the hydraulics, electronics. There's a lot involved to it, even the structural stuff. And it doesn't mean that you're jack-of-all-trades there. It goes along with the title. If you bought the job, then that's the way it is. You don't have to be an expert in all the fields, but you have to be able to see that your job was done properly and it won't hinder the life or material. . . . [Y]ou do a launch pad inspection. But they have inspectors that come out and do that. But a lot of times, the inspectors have to report to you – and being you, I'm saying myself as a quality engineer – and explain to you that they didn't like this or they didn't like that. You would check it out and find out – or you can go ahead and override them and say this is the way it's going to be. . . Ground control is everything that doesn't leave the earth. That's the traction drive, everything that moves and keeps the pad structure functioning, and that's what you call ground. So when I say ground control, that's what I'm talking about. . . . [Y]ou do daily inspections. Somebody does. Not always you personally, but you had to check the track that the thing moves on. And you'd check out different – what you've got, no-go gauges that tell you yes and no, and red and green, and make sure that those kind of lights are functioning and that it's, you know, safe for the crew to go out and do a job. Or that system is being shut down so they can work on it. You check it and make sure, sign it, come back, and use the – the one that also clears it and brings it back up online again.

R. 241-43 (emphasis added).

Plaintiff contends that the ALJ improperly delegated his fact finding responsibilities by using the testimony of a Vocational Expert to determine that Plaintiff could perform his past relevant work. Plaintiff contends that the ALJ relied solely on information supplied by the VE and failed to make his own evaluation as to Plaintiff's ability to perform his past relevant work on the record. The Commissioner argues that the VE's testimony was proper because it verified the exertional demands of Plaintiff's former job and offered an opinion as to whether Plaintiff's RFC was compatible with this job.

Under the Social Security regulations, the ALJ may use the DOT or VE testimony for information about the requirements of work in the national economy for steps 4 and 5 of the sequential evaluation process. The ALJ may consult a VE to determine whether an impairment prevents a plaintiff from performing past relevant work. 20 C.F.R. § 404.1560(b)(2). A VE may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a plaintiff's past relevant work, either as the plaintiff actually performed it or as generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2). A VE may also offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the plaintiff's medical impairments can meet the demands of the plaintiff's previous work, either as the plaintiff actually performed it or as generally performed in the national economy. 20 C.F.R. § 404.1560(b)(2).

The regulations support the ALJ's use of the VE's testimony to determine whether Plaintiff could perform his past relevant work in this case. The VE testified that plaintiff's civilian quality assurance engineering job required light exertion and was skilled work. R. 256. Plaintiff's transferable skills would be those of dealing with people, using people, and the ability to maintain and

provide reports. R. 256. Plaintiff's quality assurance engineering work in the Navy would be about the same; as the VE described, "more desk work, more interpersonal skills to go with the master chief." R. 256. With some exertional restrictions, the VE testified that Plaintiff would be able to perform his past relevant civilian work (but not in the military because he would not be able to be physically qualified to perform all functions). R. 257. With the restrictions that the ALJ ultimately applied to Plaintiff in the decision, the VE testified that Plaintiff would be able to perform his past relevant work. R. 257. Even with the restriction that Plaintiff could not climb ladders or scaffolding, the VE testified that Plaintiff would be able to perform his past relevant work because employers would modify the job to accommodate Plaintiff, just as his last employer had done for him in his last position. R. 259. The ALJ was entitled to rely on the VE's expert opinion regarding the demands of Plaintiff's past relevant work in deciding whether Plaintiff's impairments would preclude Plaintiff from performing his past relevant work.

### C. Combination of Impairments

Plaintiff contends that the ALJ erred by failing to consider his impairments in combination. The Commissioner contends that the ALJ's decision clearly reflects that he properly considered Plaintiff's impairments in combination. The Court agrees.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the

effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

The ALJ found: "The medical evidence indicates that the claimant has severe osteoarthritis of the left hip, diabetes mellitus, chronic obstructive pulmonary disease, early osteoarthritis of the ankles and mild osteoarthritis of the right knee, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19-20. The ALJ also found that Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations. 20 CFR § 404.1520(b). R. 22, Finding 3. But that "these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." *Id*., Finding 4. The ALJ's decision reflects that he considered Plaintiff's diabetes, COPD, and hip and joint problems in combination and the ALJ's decision is supported by substantial evidence.

## CONCLUSION

The record in this case shows that Plaintiff did not enjoy full health and that his lifestyle and activities were affected by his ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on May 4, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record